Lonnie Joe MOORE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. O–74–820.

Court of Criminal Appeals of Oklahoma.

March 24, 1975.

Jim McClendon, Broken Bow, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

PER CURIAM:

Appellant, Lonnie Joe Moore, hereinafter referred to as defendant, was charged in the District Court, McCurtain County, Case No. CRF–70–167, with Knowingly Concealing Stolen Property, in violation of 21 O.S., § 1713. On January 18, 1974, defendant pleaded guilty and his punishment was fixed at a term of three (3) years' imprisonment, and same being suspended. On March 19, 1974, a Motion to Revoke Suspended Sentence was filed in said cause alleging that the defendant had committed the offense of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor, in violation of 47 O.S.1971, § 11–902, and further, committed the offense of Operating a Motor Vehicle While Under Suspension, in violation of 47 O.S.1971, § 6–303. Thereafter, an Amended Motion to Revoke Suspended Sentence was filed alleging that the defendant had committed the offense of Illegal Transportation of

Open Can of Beer, in violation of 21 O.S. 1971, § 1220, and further alleged the defendant had committed the offense of Operating a Motor Vehicle Without Driver's License, in violation of 47 O.S.1971, § 6-101. This motion was heard on June 17, 1974, before District Judge Neal Merriott, who ordered the suspended sentence revoked. From an Order Revoking Suspended Sentence, an appeal has been perfected to this Court.

At the revocation hearing, James E. Murphy, Sheriff of McCurtain County, testified that he observed a pickup weaving down U.S. 70, on March 16, 1974. The pickup left U.S. 70 and stopped on an adjacent road. Sheriff Murphy testified that he observed the defendant walking toward the front of the pickup, urinating. The witness asked for a driver's license, but was informed by the defendant that he didn't have one. According to the witness, the defendant was staggering, had red eyes, and appeared intoxicated. Beer was found in the pickup seat.

On cross-examination, the witness admitted that he did not inform the defendant of his rights prior to asking him for his driver's license. Witness Murphy further testified that the defendant was not offered a breathalyzer test.

G. D. Roath, McCurtain County Deputy Sheriff, testified substantially, the same as Sheriff Murphy, but additionally, that the defendant had a beer in his hand.

Sam Hess, Court Clerk in McCurtain County, testified that State Exhibit Number One was a certified copy of the Judgment and Sentence suspended on a plea of guilty in Case No. CRF–70–167, styled State of Oklahoma vs. Lonnie Moore, but upon argument of counsel, the trial court reserved a ruling on the admissibility of the exhibit.

Gary Brock, the Associate District Judge for McCurtain County on January 18, 1974, testified that State's Exhibit Number One was the Judgment and Sentence of Lonnie Moore for the offense of Knowingly Concealing Stolen Property that he signed as Associate District Judge. This concluded the testimony.

 The defendant alleges in his first assignment of error that the trial court erred when it permitted witnesses to testify concerning the offense of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor. Witnesses Murphy and Roath testified according to their personal observations. It is argued that these witnesses failed to administer sobriety tests, i. e., the breathalyzer and blood tests; thereby violating the defendant's right to due process, since 47 O.S.1971, § 751 requires such tests.

The provisions of 47 O.S.1971, § 751, are as follows:

"§ 751. *Implied consent to chemical test for determining alcoholic content of blood*

Any person who operates a motor vehicle upon the public highways or streets of this state shall be deemed to have given consent subject to the provisions of this act to a chemical test or tests of his blood or breath, at the election of the person proposed to be tested for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer after having arrested a person and having reasonable grounds to believe the person driving or in actual physical control of a motor vehicle upon the public highways was under the influence of alcohol or intoxicating liquor."

The interpretation of this statute logically requires a total reading. The defendant seems to rely solely upon the last sentence and reaches the conclusion that the tests are mandatory. This is plainly erroneous. The statute, as written, applies to the implied consent of a vehicle operator when required to submit to these tests rather than a guarantee to a vehicle operator that such tests shall be given. The cases written regarding this statute inferentially support this interpretation. In State v. Carson, Okl.Cr., 512 P.2d 825 (1973), on a re-

served question of law, this Court held that the trial court abused its discretion in dismissing a prosecution for driving while under the influence of intoxicants upon the suppression of alcohol test results when there was still sufficient evidence to call the motorist to trial and to establish prima facie case for the jury. By analogy, it follows where the State has a prima facie case, as in the case at bar, that it may go to the jury. It follows, therefore, that the sobriety tests merely go to the sufficiency of the evidence, rather than serving as a condition precedent for such prosecution. We find, therefore, this assignment of error to be without merit.

█ Defendant's last assignment of error alleges the trial court erred when it permitted witnesses Murphy and Roath to testify concerning statements made by the defendant when he had not been advised of his constitutional rights as required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The conversation which ensued between witness Murphy and the defendant appears as follows (Tr. 4):

"Q. Then what did you do?

"A. I approached on down there and he had gotten out of the pickup and walked up towards the front letting his kidneys act and I asked him for his driver's license.

"Q. What did he say?

"A. He said he didn't have any.

"Q. Okay, and then what happened?

"A. He stated that he didn't have any and he had some beer and I arrested him for no driver's license and brought him to the county jail."

Witness Roath testified to what he heard the defendant say to Officer Murphy, which was substantially the same as the above testimony.

In Fritts v. State, Okl.Cr., 443 P.2d 122, where a police officer had arrested a motorist for a traffic violation, the following testimony was alleged error:

"Q. Did you hear this man speak?

"A. We conversed at the scene while we were waiting on the wrecker.

"Q. Describe his speech to the jury, if you will.

"A. His speech was very slurred and at times he would ramble and say things that weren't pertinent to what was going on. However, I did ask him if he had anything to drink and he stated, 'yes, he had been drinking all night before and all that day' . . . "

In *Fritts,* supra, we stated:

"This Court is of the opinion that the defendant was not subjected to questioning within the contemplation of Miranda or Escobedo, supra. We do not think that the evils with which the United States Supreme Court was concerned in Miranda were present.

"The defendant was not held incommunicado in an isolated setting in the privacy of an interrogation room in a police station. He was not swept from familiar surroundings into police custody, surrounded by antagonistic forces and subjected to the techniques of persuasion."

"At the time of the statement, defendant was standing on a public street on a Sunday afternoon, beside the car in which he had been driving, in the presence of one police officer who had stopped him for a traffic violation . . . . "

\*　\*　\*　\*　\*　\*

"This Court is of the opinion that the question asked by the police officer did not amount to the 'custodial interrogation' as contemplated by Miranda, and feel that neither the Miranda or Escobedo cases, supra, are factually similar to the instant case, and, therefore, would not compel the state to demonstrate the use of the procedural safeguards therein enunciated, even though the officer went further than required, and did so advise defendant."

In the instant case, we hold by analogy that the arrest and brief questioning of the defendant did not require a Miranda warning. This assignment of error is, therefore, without merit.

For all of the above and foregoing reasons, the order revoking suspended sentence is hereby affirmed.